IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA HOENIG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) Civil Action No. 2:21-342 |
| | ) |
| | ) Magistrate Judge Dodge |
| NASCO HEALTHCARE, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Plaintiff Angela Hoenig brings this action under Pennsylvania law against her former employer, Defendant Nasco Healthcare, Inc., in which she seeks unpaid commissions and bonuses to which she claims to be entitled.

After the conclusion of discovery, Defendant filed a motion for summary judgment (ECF No. 80). As part of her response to Defendant's motion, Plaintiff submitted her affidavit (ECF No. 94 at 157-66). Defendant then filed a Motion to Strike Plaintiff's Sham Affidavit and for Sanctions Pursuant to Fed. R. Civ. P. Rule 56 (ECF No. 102).

For the reasons that follow, the motion will be granted in part and denied in part.[1]

**I. Discussion**

Under the sham affidavit doctrine, "a court will disregard an affidavit that is inconsistent with an affiant's prior deposition testimony . . . unless the party relying on the affidavit in opposition to the motion can present a legitimate reason for the discrepancies between the deposition and the affidavit." *Smith v. Johnson and Johnson,* 593 F.3d 280, 285 n.3 (3d Cir. 2010); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) ("[A] party

---

[1] The parties have fully consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (ECF Nos. 7, 9.)

cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) ("[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.") (internal quotations omitted).

"Thus, under the sham affidavit doctrine, to exclude the affidavit two requirements must be met: (1) the later statement contradicts the witness's deposition testimony, and (2) the discrepancy between the two statements is neither supported by record evidence nor otherwise satisfactorily explained." *Meigs v. Care Providers Ins. Servs., LLC*, 2023 WL 187494, at *8 (E.D. Pa. Jan. 13, 2023) (citation omitted).

If a court decides that statements in an affidavit directly contradict prior deposition testimony, the Third Circuit recognizes two methods that may be used to establish that a contradictory affidavit is not a sham: (1) independent evidence in the record that may bolster the questionable affidavit; or (2) a satisfactory explanation offered by the affiant for the discrepancy between the prior deposition and the affidavit. *See Jiminez*, 503 F.3d at 254. However, as the Court of Appeals has cautioned:

> Because summary judgment does not present an occasion to make credibility assessments, *see Jiminez*, 503 F.3d at 253, the sham affidavit rule does not permit striking the entirety of a later-provided affidavit or declaration since doing so would require a broader assessment of the witness's credibility. Thus, the sham affidavit rule permits striking only contradictory statements in later-provided affidavits or declarations.

*SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 210 (3d Cir. 2022).

A. <u>Motion to Strike</u>

Defendant moves to strike following paragraphs from Plaintiff's affidavit: paragraphs 12 through 16, 19 through 21, 23, 26 and 27.[2] Defendant contends that some of the paragraphs contain statements that directly contradict Plaintiff's deposition testimony, others conveniently supplement her prior deposition testimony and one paragraph is not based on Plaintiff's personal knowledge but on inadmissible hearsay.

Plaintiff denies that she has contradicted her prior testimony. In addition, she argues, supplementing prior deposition testimony is not prohibited by the sham affidavit doctrine. Finally, she contends that the paragraph challenged as hearsay is not objectionable because the witnesses are plaintiffs in similar cases who will be called at trial.

1. Contradiction of Prior Testimony (Affidavit ¶¶ 12, 13, 15)

**Paragraph 12**

In paragraph 12(B) of her affidavit, Plaintiff contends that after she received the April 11, 2017 email from her supervisor Jack McNeff, she:

> protested the proposal in the fourth bullet point, which suggested that I would be required to match my previous year's dealer/distributor sales before receiving commission on any sales that exceeded last year's sales. Mr. McNeff assured me that the proposal was only an outline, that nothing had been finalized, and that he would be presenting the final proposal at some time in the near future.

(Hoenig Aff. ¶ 12(B).)[3] As Defendant notes, however, Plaintiff testified at her deposition that McNeff "gave me the new commission structure. There was no[] negotiation of it." (Hoenig

---

[2] Defendant's Motion seeks to strike Plaintiff's entire affidavit. In its motion, however, Defendant states that: "Paragraphs 1-11, 17-18, 22, 24-25 and 28 of Plaintiff's Affidavit are immaterial and irrelevant to Defendant's Motion for Summary Judgment, and/or have been fully addressed in Defendant's Reply in Support of its Motion for Summary Judgment." (ECF No. 102 at 2 n.1.) Because Defendant only addresses specific parts of the cited paragraphs, the Court will address only those disputed sections.

[3] Defendant has not moved to strike paragraph 12(A) of the affidavit.

Dep. 92:21-22.) She further testified that "that's what he offered me and I did it, because I wanted to work at the company." (*Id.* 93:4-5.)

According to Plaintiff, she also testified that she did negotiate with McNeff at first, then left the matter to him because she trusted him. Plaintiff's actual testimony was as follows:

> Q. Now, you were -- you had entered into this agreement, alleged agreement, with Simulaids at or about the same time that Mr. Long and Mr. Goodson were hired.
>
> A. I was part of negotiations of this agreement prior to them being hired, and then we all entered it -- I entered the portion earlier than their hire date, but, yes.[4]
>
> Q. Okay. And with whom did you negotiation [sic] the terms of this new commission structure?
>
> A. Jack gave me the new commission structure. There was no[] negotiation of it.
>
> Q. Okay, all right. So there was no back and forth, no discussion of different terms. It was just a take it or leave it type thing?
>
> A. I trusted him.
>
> Q. Well, it was take it or leave it?
>
> A. Well, that's what he offered me and I did it, because I wanted to work at the company.

(Hoenig Dep. 92:11-93:5.)[5]

Despite Plaintiff's attempt to reconcile her affidavit with this testimony, she cannot point to any support in her deposition for the position that she protested the fourth bullet point or that McNeff agreed that it was not final (at that time).[6] Her vague reference to being "part of the

---

[4] The parties do not identify the date(s) when Goodson and Long were hired. It is evident from Goodson's deposition testimony, however, that before he accepted employment, he reviewed the Domestic Commission Plan attached to the McNeff email of April 11, 2017. (ECF No. 83 at 40.)
[5] This testimony is also consistent with the allegations in the Complaint and Amended Complaint that the April 11, 2017 email represents Plaintiff's revised commission structure. The Amended Complaint was filed on May 31, 2022. Plaintiff's deposition was taken on June 27, 2022.
[6] In her deposition, Plaintiff also relied on an email sent by Kelly Jacobson to Matthew Long in June 2017 in which Jacobson stated that McNeff told Jacobson that the commission was two

negotiations of this agreement" does not correspond to the assertion made in her affidavit. The Court concludes that paragraph 12(B) of the affidavit contradicts prior deposition testimony and Plaintiff does not point to any other record evidence in support of paragraph 12(B), nor does she satisfactorily explain the discrepancy between this paragraph and her deposition testimony. Therefore, paragraph 12(B) will be stricken and will not be considered in connection with the pending motion for summary judgment.

**Paragraph 13**

In paragraph 13, Plaintiff states that she did not recall certain events but that "after reviewing the thousands of documents produced by the Defendant, I found the email dated April 24, 2017, from Mr. McNeff to me, which described the final commission structure." (Hoenig Aff. ¶ 13.) This email "refreshed her recollection as to what occurred after [her] receipt of the April 11, 2017 email from Mr. McNeff." (*Id.*) Plaintiff responds that paragraph 13 merely explains how she reviewed the voluminous discovery in this case and that her memory about the April 24, 2017 email was refreshed. She contends that there is no contradiction between this statement and her deposition testimony.

While it is unclear from a review of the affidavit when Plaintiff conducted her review of documents produced in discovery, Defendant notes that at her deposition in July 2022, she testified about the April 24 email—meaning that she was aware of it at that time. (Hoenig Dep. 173:16-22.)

In her response to Defendant's motion for summary judgment, Plaintiff, relying in part on her affidavit, asserts that the April 24, 2017 email sets forth a revised commission agreement.

---

percent on direct sales. (ECF 83 at 178.) Plaintiff testified in her deposition that the agreement that she would be paid this commission was "formed" when this email was sent. (ECF No. 94 at 49.) While this record evidence may support Plaintiff's claims that she was entitled to this commission, it does not support her affidavit testimony.

5

(ECF No. 93, PCSMF ¶¶ 25, 28-29.) McNeff states in the email that "here is the commission rates we discussed." Attached to this email a document called "Proposed Domestic Commission Schedule."

Defendant notes that in her deposition, however, Plaintiff testified that the attachment to the April 24 email does not demonstrate that Defendant committed to pay her a two percent commission on all distributor sales and nothing in the email supports that. (Hoenig Dep. 200:15-21; 201:9-18.)

As Plaintiff observes, her deposition testimony itself is subject to various interpretations. She testified both that she was relying on this document to support her claim and also that it does not demonstrate entitlement to the commission she claims. When questioned about whether this document demonstrates her claim, she testified "[w]ell, it's not just this one."

Regardless of whether her memory was refreshed before or after her deposition, Plaintiff's deposition testimony appears to be ambiguous. Moreover, as discussed more fully in the Court's summary judgment opinion, the record includes some other evidence that could support Plaintiff's distributor commission claim.[7] Whether the April 24, 2017 email represents the final revisions to the commission plan remains unresolved. Thus, while issues about the meaning of all of the record evidence, including but Plaintiff's testimony and her subsequent affidavit, are undoubtably subject to further exploration, the Court cannot conclude that her affidavit completely contradicts her deposition testimony. Therefore, with respect to paragraph 13, Defendant's motion will be denied.

---

[7] See DCSMF ¶¶ 25(G-I), 113-117, 124.

6

**Paragraph 15**

In paragraph 15, Plaintiff states that, with respect to an April 15, 2019 email exchange with McNeff, he "gave me no indication, either in writing or orally, that I would not be paid for internet sales in my territory." (Hoenig Aff. ¶ 15.) Defendant argues that when asked about this email at her deposition, she made no reference to internet sales, but instead claimed that it was meant to show McNeff that she had access to information regarding Nasco Wisconsin sales. (Hoenig Dep. 265:16-268:24.)

Plaintiff responds that although the cited portion of her deposition testimony does not include anything about internet sales, she was not asked during her deposition if there was anything else about the April 15 email that was of significance to this case. Although the email at issue references internet sales, Defendant did not question Plaintiff about this reference. Thus, Plaintiff contends that the affidavit does not flatly contradict her deposition testimony about this email.

The Court agrees. With respect to paragraph 15, Defendant's motion to strike will be denied.

2. Supplementing the Record (Affidavit ¶¶ 14, 15, 16, 19, 20, 23, 26, 27)

Defendant moves to strike the following statements because they seek to supplement Plaintiff's testimony with allegations that either are unsupported by evidence of record or improperly introduce new evidence:

- She "ran a report that produced historical sales data for all Nasco sales from the beginning of [her] employment, up to that point," and when another salesperson asked her about certain data found in the report, the statements from her supervisor Jack McNeff "turned out to be untrue." (Hoenig Aff. ¶ 14.)

7

- She conducted research "in preparation of [her] response to the Defendant's motion for summary judgment." (*Id.* ¶ 15.)

- She could not have tracked her Nasco Wisconsin sales because she did not have time to do so, noting that "in 2019, there were 13,616 invoices from Wisconsin sales made in [her] territory." (*Id.* ¶ 20.)

- She is owed a total of $689,346.04 (without any citation to the record.) (*Id.* ¶ 23.)

- She has "reviewed the sales commissions paid to [her] for [her] entire employment with the Defendant" and she "was not paid commissions on giveaways or demos at any point in time." (*Id.* ¶ 27.)

Plaintiff responds that these statements do not improperly supplement her deposition testimony. For example, she testified at her deposition that she did, in fact, perform calculations to determine which invoices did not include commissions paid to her that were owed to her. (Hoenig Dep. 325-27); and that because she had 23 states to monitor, she did not have time to keep track of all of her sales out of Wisconsin. (*Id.* at 231).

In addition, Defendant moves to strike paragraphs 16 and 19 of the Affidavit which describe and rely on a document Plaintiff created called "Big Boy II." Defendant asserts that this document was not referenced in her deposition and was never produced in the case. In turn, Plaintiff argues that Defendant created "Big Boy II" and produced it to her over two and a half years ago. She contends that it is the document that first alerted her to "the fraudulent attempts by the Defendant to hide information about commission worthy sales from the Plaintiff, which prompted the Plaintiff to amend her complaint to add claims of fraud." (ECF No. 112 at 2.)

Finally, Defendant objects to paragraph 26, which describes a "sequence of events" that allegedly caused Plaintiff to believe that she was being "cheated out of hundreds of thousands of

8

dollars" beginning in 2020 (Hoenig Aff. ¶ 26) but makes no reference to any record evidence in this case and is not supported by her deposition testimony. Defendant notes that Plaintiff was instructed at the deposition that, if she remembered anything further, she could inform counsel at any time and it would be placed on the record (Hoenig Dep. 92:7-10), but she never did so.

As summarized above, the sham affidavit doctrine is concerned with affidavits that contradict prior testimony, not those that supplement it. *SodexoMAGIC*, 24 F.4th at 209. Defendant has not contended that any of these statements contradict Plaintiff's deposition testimony and thus they are not subject to the sham affidavit doctrine. It has not explained why she could not have reviewed her commissions and, for example, determined that she was paid on 200 occasions for Dealer/Distributor Sales that Defendant contends she was not entitled to receive. This statement does not contradict her deposition testimony; it supplements it with additional information. And to the extent that Plaintiff's statements about her alleged damages are unsupported by *any* evidence (for example, the amount that she claims she is owed), then any such statements would be inadmissible at any rate.[8]

Therefore, with respect to these paragraphs, which do not contradict prior deposition testimony, the motion to strike will be denied.

3. Hearsay

Defendant moves to strike paragraph 21 of Plaintiff's affidavit. In this paragraph, Plaintiff states that she asked two other salespersons, Rush Goodson and Matthew Long, when they first heard that they would be paid only on Nasco Wisconsin sales that they "procured," and that they "said that they had never heard that limitation on Wisconsin sales, or on any sales

---

[8] The majority of the paragraphs at issue relate to damages. As referenced in the Court's summary judgment opinion, given the existence of material issues of fact exist regarding liability, the Court did not address damages issues. Defendant may object before or at trial to any proffered evidence about Plaintiff's claimed damages.

shipped to their territory prior to the discovery phase of the lawsuits filed by each salesperson." (Hoenig Aff. ¶ 21.)

Defendant contends that these statements are hearsay and should be stricken. Plaintiff counters that Goodson and Long were employed by Defendant and are plaintiffs in similar cases whom she intends to call them as witnesses at trial.

"In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir. 2000); *see also* . Plaintiff indicates that she intends to call these individuals as witnesses at trial and Defendant has not presented any reason why she could not do so. Therefore, while Defendant may object to their testimony at trial, Plaintiff's hearsay statement about what they told her may be considered on a motion for summary judgment. [9]

Thus, Defendant has failed to support its request to strike paragraph 21.

B. <u>Motion for Sanctions</u>

Rule 56(h) states the following:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h). As the Rule explicitly states, only the submitting party may be required to pay the reasonable expenses, not the party's attorney, although the Rule allows either the party or attorney or both to be held in contempt or subjected to other appropriate sanctions. *See* 10B Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Civ.* § 2742 (4th ed.)

While the motion to strike will be granted with respect to paragraph 12(B), the Court

---

[9] At any rate, this specific hearsay evidence is not dispositive of Defendant's motion for summary judgment.

10

does not find that Defendant has demonstrated that the affidavit was submitted in bad faith or solely for the purpose of delay. Therefore, the motion for sanctions will be denied.

## II. Conclusion

For these reasons, Defendant's motion to strike portions of the Plaintiff's affidavit and for sanctions will be granted as to paragraph 12(B) and denied in all other respects.

An appropriate order follows.

Dated: March 19, 2024               /s/ Patricia L Dodge
                                    PATRICIA L. DODGE
                                    United States Magistrate Judge