IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA HOENIG, ) ) Plaintiff, ) ) vs. ) Civil Action No. 2:21-342 ) NASCO HEALTHCARE, INC., ) ) Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Hoenig ("Hoenig") brings this action against her former employer, Defendant Nasco Healthcare, Inc. ("Nasco"), in which she seeks unpaid commissions and bonuses to which she claims to be entitled.

After the conclusion of discovery, Nasco filed a motion for summary judgment (ECF No. 80). Subsequently, the Court issued a Memorandum Opinion (ECF No. 115) and Order (ECF No. 116)[1] that granted in part and denied in part Nasco's motion, as discussed in more detail below.

Pending before the Court is Hoenig's motion for reconsideration entering summary judgment in Nasco's favor with respect to certain claims. (ECF No. 140). For the reasons below, Hoenig's motion for reconsideration will be denied.

### I.   Relevant Procedural History

Hoenig commenced this action in March 2021. The original Complaint included claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.12 (WPCL). On May 31, 2022, after some discovery, Hoenig amended her complaint to add additional counts of fraudulent concealment (Count III) and fraud (Count IV) (ECF No. 33).

---

[1] The parties have fully consented to jurisdiction by a magistrate judge.

After discovery was completed, Nasco moved for motion for summary judgment (ECF No. 80). On March 19, 2024, the Court issued a Memorandum Opinion and Order that granted Nasco's motion with respect to the fraudulent concealment and fraud claims in Counts III and IV and also with respect to certain aspects of Hoenig's commission claim. Nasco's motion was otherwise denied because the Court found that there are genuine issues of material fact as to Hoenig's commission structure and whether she was paid for all commissions she allegedly earned.

In addition to Hoenig's action, lawsuits were brought against Nasco by two other former employees who also sought unpaid commissions. Former employee Matthew Long commenced a lawsuit against Nasco in the United States District Court for the Northern District of Illinois, Civ. A. No. 21-2320 ("the Long Action"). A second former employee, James Goodson, commenced his lawsuit in the United States District Court for the Northern District of Texas, Civ. A. No. 21-1467-N ("the Goodson Action"). Both actions were pending when the summary judgment opinion was issued in this case.

On March 30, 2024, shortly after this Court issued its opinion, Nasco's motion for summary judgment in the Long Action was granted and judgment was entered in Nasco's favor. In the Goodson Action, Nasco's motion for summary judgment was denied. Trial in the Goodson action is scheduled to begin in September 2024.

Hoenig's counsel first raised the possibility of filing a motion for reconsideration during a telephone conference in April 2024.[2] No motion was filed during the next several months, however. During a July 2024 conference that was scheduled by the Court to discuss a trial date,

---

[2] While the Court's Practices and Procedure state that motions for reconsideration must be filed within seven days of the date of the order at issue, Practices and Procedures at II. I, the Court acknowledges that it did not raise this matter during either conference in which the possibility of a motion for reconsideration was discussed.

Hoenig's counsel again raised the issue. He was advised that if he intended to move for reconsideration, he must do so by July 16, 2024. Hoenig's motion was filed on that date and Nasco subsequently filed a brief in opposition on July 23, 2024 (ECF No. 141).

In her motion, Hoenig argues, among other things, that based on certain information and matters that occurred recently in the Goodson Action, this Court should reconsider its decision to grant judgment in Nasco's favor with respect to her fraud and fraudulent concealment claims in this case.

## II.     Standard of Review[3]

Typically, a party seeking reconsideration must show at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). *See also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

As Nasco argues and as several judges of this Court have observed, however, this standard applies to a motion for reconsideration of a final order or judgment. A motion for reconsideration of an interlocutory order, such as a denial of summary judgment, is governed by Rule 54(b), which states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

---

[3] As Nasco observes, Hoenig does not discuss the standard of review or how she may have met it in this case.

Thus, "[t]he court may permit reconsideration whenever 'consonant with justice to do so.'" *Nyamekye v. Mitsubishi Elec. Power Prod., Inc.*, 2018 WL 3933504, at *3 (W.D. Pa. Aug. 16, 2018) (Conti, C.J.) (quoting *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016)). *See also State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 & n.14 (3d Cir. 2016) ("the District Court has the inherent power to reconsider prior interlocutory orders" and to "reconsider them when it is consonant with justice to do so."); *Jackson v. O'Brien*, 2021 WL 3174687, at *1 (W.D. Pa. July 27, 2021) (Lanzillo, M.J.) ("A motion for reconsideration is also appropriate in instances where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.")

Nevertheless, "[t]he Rule 54(b) standard, while less rigorous, is not without teeth [and] a movant must still establish good cause for why the court should revisit its prior decision." *Michalek v. Nationwide Mut. Fire Ins. Co.*, 2022 WL 1782503, at *2 (W.D. Pa. June 1, 2022).

**III.   Discussion**

    A.   <u>Relevant Aspects of the Summary Judgment Opinion</u>

On March 19, 2024, the Court granted summary judgment in favor of Nasco on Hoenig's claim of fraudulent concealment (Count III) because she did not bring suit within two years of the date that she knew or should have known that Nasco was not paying all of her commissions.[4] This holding was based on record evidence that as early as 2017, Hoenig concluded that she was not receiving all earned commissions on Wisconsin sales. While the fraudulent concealment claim accrued in 2017, Hoenig did not bring this claim until 2022, and therefore, her claim is barred by the two-year statute of limitations.

---

[4] The statute of limitations for fraud claims in Pennsylvania is two years. 42 Pa. C.S. § 5524(7).

Summary judgment was also granted in favor of Nasco on Hoenig's fraud claim (Count IV) because she knew in 2017 that she was not receiving all of her commissions but did not amend her Complaint to allege fraud until 2022.

B. <u>Analysis of Hoenig's Motion</u>

1. Evidence in the existing record

Hoenig asserts that her "initial response to Defendant's motion [for summary judgment] was inadequate because "it failed to properly explain the relevance of the record evidence offered by the Plaintiff relative to this issue." (ECF No. 140 at 2.) As Nasco notes, however, by taking this position, Hoenig admits that the evidence was in the record and could have been explained or emphasized. Thus, this evidence cannot be classified as new, nor does an inadequate response justify reconsideration. Nonetheless, the Court will consider the evidence of record as it existed when the summary judgment motion was decided in order to determine if it erred by failing to consider facts in the record.

In its summary judgment opinion, the Court addressed Hoenig's argument that she did not learn until sometime later that her supervisor, Jack McNeff, had fraudulently represented to her that he did not have access to certain data or that he never intended to pay her for the sale of Wisconsin products. As the Court stated: "Whether she knew at that time that McNeff was not being truthful when he indicated that he had no access to certain data is simply not relevant." (ECF No. 115 at 24.) The Court concludes that Hoenig's attempt to rely upon later events fails because it does not controvert the fact that according to her, when she complained to McNeff in 2017 that she was not receiving proper commissions on Wisconsin sales, McNeff promised her that she would receive a 2% commission on all sales regardless of her involvement in the sale. He did not do so, however, thereby giving rise to a fraud claim more than two years before the Complaint was

amended in 2022. Moreover, as the record reflects, Hoenig was able to independently verify that Nasco failed to pay her for certain commissions she claims to be owed. Thus, whether McNeff falsely stated that he could not access certain data simply doesn't matter because as of 2017, there was no affirmative act of concealment by Nasco given Hoenig's ability to access records. Whether the records were fully accurate or the amount of commissions to which Hoenig claims to be entitled to could be determined by her are not the determinative issues; rather, the issue is whether she knew she wasn't being paid commissions. It is uncontroverted that she had this knowledge well before the Complaint was amended.

As Nasco argues, even if the Court considers later events as a starting point for its analysis of the statute of limitations, Hoenig expressed concern to Nasco in 2019 that she was not being paid for all of her sales, a conclusion that she reached based upon a "drop box" that contained Nasco Wisconsin data. In her April 15, 2019 email to McNeff, she stated that she was aware of Nasco Wisconsin sales in her territory, and that some were sales that she had worked on over the past two years but never heard a word about. Further, while she claims that she was unable to compute the amount of commissions she was owed, she had concluded by 2019 that she wasn't being paid for all of them. Armed with this knowledge no later than 2019, Hoenig failed to bring her fraud claims within the limitations period.

        2.   Availability of new evidence

Hoenig also asserts that new information she learned from the Goodson Action demonstrates that Nasco "changed sales data to defraud her and the other Plaintiffs in the related actions of earned commissions over the entire course of time between 2017 and the Plaintiff's separation from employment in April, 2021." (ECF No. 140 at 2.) In asserting this argument, she relies on four sources of information that she claims to be evidence of fraud.

According to Hoenig, the first source of information comes from Carlos Vela, Goodson's IT expert. Hoenig indicates that Vela's deposition excerpts were unknown to until these excerpts were attached to a brief filed by Nasco in support of its motion for reconsideration in the Goodson Action on June 6, 2024. Before then, Goodson and his counsel were bound by an agreement not to share information with Hoenig or her counsel in this case. (ECF No. 140 Ex. B ¶ 4.) Hoenig suggests that the following question asked by Nasco's counsel at his deposition was misleading and elicited an incorrect response:

> Q. Those commission reports came from a – another report called – generated by this software program called QLIK?
>
> A. Correct.

(ECF No. 140 Ex. D at 28:18-21.) Hoenig insists that the question posed represented a "false premise" because the reports at issue were not generated from the QLIK program. As Nasco notes, however, no objection was made to this question by Goodson's counsel and Vela was free to reject or modify the characterization in the question but did not do so. In any event, Hoenig has not explained the significance of this exchange.

The second source is alleged to be Nasco's questioning of Vela about the use of "journaling" in the collection and retention of sales data. Hoenig contends that her review of Vela's testimony "caused [her] to realize that turning off the journaling for an account would be a way to hide evidence of when an account was assigned to a salesperson, and when that account was removed from that salesperson." (ECF No. 140 Ex. B ¶ 7.)[5]

Nasco responds that Hoenig's lay opinion about what journaling could be used for is pure speculation on her part since she is not an IT or ERP systems expert qualified to offer such an

---

[5] This information comes from the "Second Affidavit of Angela Hoenig."

opinion. By contrast, Vela is such an expert who had access to the ERPs and concluded that there was no evidence of sales data tampering.

The Court concludes that Hoenig's speculation about what could have happened if the journaling feature had been turned off does not constitute evidence of fraud, much less new reliable evidence that justifies her request for reconsideration. This is particularly compelling in the absence of any expert testimony that might support Hoenig's surmise.

The third source cited by Hoenig relates to Vela's statement that there were invoices that appeared in the "Big Boy" database compiled by Hoenig that do not appear in Nasco's ERP database. Hoenig asserts that, because she "created Big Boy I from the QLIK system, and because, according to Mr. Vela, Big Boy I did not match the ERP database, the Plaintiff began to wonder what source QLIK drew its data from." (ECF No. 140 Ex. B ¶ 8.)

According to Nasco, Vela subsequently conceded that his statement about missing invoices was made in error and he had been able to locate all but one of the supposedly missing entries. Vela believed that the Excel formula he used had been faulty. (ECF No. 141 Ex. F at 199:5-20, 202:12-204:2, 213:10-20, 214:23-25, 216:16-21, 217:22-25, 218:1-25, 219:1-20.) Nasco also notes that even Vela's original conclusion was that there were approximately 51 "missing" entries out of 400,000 entries in Big Boy is a margin of error of 0.01275%.

The Court concludes that Hoenig's citation to Vela's testimony about missing invoices fails to acknowledge his later correction about this issue and does not represent evidence of fraud. Again, Hoenig's speculation, without support, about the source of the QLIK data does not constitute evidence.

With respect to the fourth source of information, Hoenig states that she recently "stumbled upon a hidden document that appears to give evidence that the Defendant deliberately manipulated

its sales data," and in support cites NASCO_001376, a spreadsheet created by salesperson John Bohrman. (ECF No. 140 Ex. F-1.) She contends that she applied a function to "unhide" information on the spreadsheet showing that data for 2018 sales from the ERP system did not equal sales data for the same period in the HOST system. As a result, she "became convinced that this document evidences that the Defendant falsely manipulated its sales figures for 2018." (ECF No. 140 Ex. B ¶¶ 10-12.)

Nasco responds that Vela—an IT expert—accessed and thoroughly analyzed the ERPs, Nasco's product sales data and Big Boy and found no evidence of tampering. It argues that because Hoenig is not an expert, her opinion would not be admissible at trial and should not be credited here. It further notes that Hoenig has not shown that this document was used in connection with calculating her commissions. In addition, while it was produced on November 9, 2021, no one asked Bohrman about it when he was deposed in January 2023.

Again, the Court concludes that Hoenig's opinion about the import of this document is, at most, a lay opinion about an area in which expertise is required. In addition, she has not explained why her recent discovery of a document produced in 2021 changes the calculus about when she knew or should have known that she had a cause of action for fraud or fraudulent concealment.

Finally, Hoenig refers to (but does not attach) two documents that she obtained during her employment with Nasco, called "2019 Healthcare Sales Budget" and "2019 Healthcare Sales Margin." She claims to have analyzed them "using the same approach used on the Bohrman documents" and concluded that approximately $2 million in sales were removed from her region and transferred to one or more regions that did not require commission payments. (ECF No. 140 Ex. B ¶ 13.)

Nasco contends that Hoenig is again offering expert testimony (in this instance, as an

9

accounting forensics expert). Further, there is no evidence that these documents were used in calculating her commissions and that if she received them during her employment, she never complained about the alleged loss of $2 million in sales.

The Court concludes that these documents, which Hoenig has not produced, do not constitute new evidence of fraud and do not support her claim that her fraud counts should be reinstated to this proceeding.

In a final section of her motion, Hoenig contends that a filing made by Goodson on July 8, 2024 in the Texas case "contradicts" statements made by Nasco's counsel, Courtney Tedrowe during a status conference in this case the next day. Specifically, Hoenig argues that Mr. Tedrowe's representation that the records Nasco produced in the Goodson Action did not reflect fraudulent alteration of the sales data was belied by Goodson's notice to the Texas court that Nasco had still not produced "all metadata including backup tapes associated with Nasco's (sales data)." (ECF No. 140 Ex. J at 2 n.4.)

According to Nasco, Vela testified that there was no evidence of tampering with Nasco's sales data, a position he confirmed in a later-filed addendum. (ECF No. 141 Ex. E at 48:2-10.) The District Court in Texas ordered Nasco to "produce documents responsive to Goodson's Second Request for Production Nos. 1, 2, 3, and 16, including associated metadata in a native format." (ECF No. 141 Ex. B at 8.) To meet this obligation, Nasco provided Vela with in-person direct access to the ERPs themselves, and the production was in native format and provided him with access to metadata. Nasco also advised the Texas court of what was being done in a status report (*id.* Ex. C) to which Goodson made no objection. Further, the protocol employed by Vela was negotiated with counsel and the parties and counsel observed Vela's inspection and data collection over a four-day period. As noted, Vela testified that he "found no evidence whatsoever of

10

tampering with the source data" (*id.* Ex. E at 48:2-10), an opinion he did not retract in his later addendum. His opinion was to a 98 to 99% degree of certainty.

According to Nasco, discovery closed in the Goodson Action on July 12, 2024 (ECF No. 141 Ex. H) and, as of July 9, 2024, Goodson had not filed a motion to compel, for discovery sanctions or for additional discovery relating to this issue. Thus, it asserts, Mr. Tedrowe's representations at this Court's status conference were accurate.

On July 16, 2024, Goodson filed a motion for discovery sanctions, which will be decided by the court in Texas. Nasco anticipates that the court will deny Goodson's motion for three reasons: (1) the court's order did not mandate restoration of backup tapes; (2) Vela was aware of these tapes and testified that he did not need to see them to conclude that there was no evidence of tampering; and (3) the cost and delay caused by restoring backup tapes would be disproportionate to the needs of the case. In any event, it argues, the status of discovery in the Goodson Action is irrelevant because the cases have not been consolidated.

The Court concludes that Hoenig cannot rely on Goodson's filings to negate representations made by Mr. Tedrowe in this case, as if they were "admissions" on Nasco's part. Goodson is certainly entitled to take the position that Nasco has not complied with its discovery obligations in his case, but unless Nasco agrees with this position or the court in Texas finds this to be true, it remains a potential controversy in another case.

In any event, regardless of whether Nasco met all of its discovery obligations in the Goodson Action, the issue before this Court is whether Hoenig has supported her request for reconsideration of this Court's opinion that granted summary judgment in Nasco's favor with respect to her fraud claims. For the reasons cited above, she has not done so.

## IV. Conclusion

Therefore, this 13th day of August, 2024, it is ordered that Hoenig's motion for reconsideration (ECF No. 140) is DENIED.

BY THE COURT:

/s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge
